

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 9, 2014**

**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Case No. 13-33190-hdh7 |
| DONNA HUNEYCUTT RUSSELL, | § § | |
| Debtor. | § § | |

| | | |
|---|---|---|
| WILLIAM T. NEARY, U.S. TRUSTEE, | § § | |
| Plaintiff, | § § | |
| v. | § § | Adversary No. 13-03249 |
| DONNA HUNEYCUTT RUSSELL, | § § | |
| Defendant. | § § | |

### MEMORANDUM DECISION DENYING OBJECTION TO DISCHARGE

On November 10, 2014, the Court conducted trial on the *United States Trustee's Complaint Objecting to Discharge* (the "Complaint"), which initiated this adversary proceeding against Defendant Donna Russell, the debtor in the above-captioned bankruptcy case (the "Debtor"). In the Complaint, the United States Trustee (the "Plaintiff") seeks a general denial of the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2), (3), and (4). The Plaintiff alleges that the Debtor

intentionally hindered, delayed, and defrauded creditors, knowingly and fraudulently made false oaths or statements, and failed to maintain or provide adequate financial records necessary to ascertain the Debtor's financial position. The Court, having determined the parties received proper notice and that the Court has both statutory and constitutional jurisdiction in this case, is of the opinion that sufficient evidence has not been presented to the Court to support denial of the Debtor's discharge under 11 U.S.C. §§ 727(a)(2), (3), or (4), for the reasons set forth below.

## BACKGROUND AND SUMMARY

The Debtor operated an asphalt business, Andrews Paving & Construction ("Andrews Paving"), until 2013, when she wound down the business and began to work for Barson Utilities. On June 27, 2013, the Debtor filed her chapter 7 voluntary petition. In her bankruptcy schedules (the "Schedules"), the Debtor listed a residence worth $377,000; she later explained, however, that title to the residence had been transferred to her father-in-law at the behest of her husband in order to avoid IRS tax liens. The Debtor also listed personal property in excess of $450,000, but warned that the IRS holds a lien on the more than $430,000 in receivables that make up the bulk of the personal property claimed. In light of approximately $20,000 of property claimed as exempt and $1,145,000 in secured claims, the Debtor painted a bleak picture of the estate in which nothing remained to pay the unsecured creditors.

The Plaintiff filed this adversary proceeding objecting to the Debtor's discharge. The Plaintiff's objection is grounded in the exceptions to discharge under section 727(a) of the Bankruptcy Code, subsections (2), (3), and (4). In support of the Complaint under subsection (2), the Plaintiff alleges that the Debtor diverted undeposited funds from Andrews Paving into another bank account under the name of Victoria Court Ltd. LLC ("Victoria Court"), another entity she owned, so as to avoid garnishment by the IRS. The IRS possessed liens against the receivables of the Debtor in the names of Andrews Paving and Andrews Paving, LLC, but not Victoria Court.

On Schedule B, the Debtor listed only one bank account, labeled "Andrews Paving." It was later revealed that the Debtor retained control over three accounts in total, including the Andrews Paving account, the Victoria Court account, and another account. The Debtor explained under deposition that the bank account entry on her Schedules was a net amount of all three accounts. The Debtor claimed and continues to claim that she used the Victoria Court account to receive compensation as an independent contractor.

Also under section 727(a)(2), the Plaintiff draws attention to the transfer of the Debtor's residence to her father-in-law in 2003. While title to the property was transferred outside the one year preferential period under 11 U.S.C. § 547, the Debtor continued to reside on the property and make payments on the mortgage through the date of the filing of her bankruptcy. The Plaintiff asserts that these actions constitute "continuing concealment" of her home and a basis for denial of discharge under the Bankruptcy Code and Fifth Circuit precedent.[1]

The Plaintiff next objects independently under 11 U.S.C. § 727(a)(4), pointing out the Debtor's failure to disclose numerous assets, including: bank accounts, specific furnishings and household items, clothing, jewelry, electronics, and a Mercedes vehicle supplied to her by her employer. The Plaintiff also points to other omissions by the Debtor: her gross income for 2012 and 2013; gifts and transfers made to or on behalf of her relatives; the fact she was involved in a criminal proceeding at the time the bankruptcy was filed; the fact that the Debtor had custody of her 17 year old granddaughter when the petition was filed. The Plaintiff asserts that these failures to disclose were done knowingly and fraudulently, and thus the Debtor's discharge should be denied for false oaths or accounts, knowingly and fraudulently made throughout her Schedules and Statement of Financial Affairs.

---

[1] The Plaintiff directs the Court to *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 554-55 (5th Cir. 1987) (adopting the "continuing concealment" doctrine for denial of discharge under section 727(a)(2)(A)).

Finally, the Plaintiff objects to the Debtor's discharge under section 727(a)(3), which provides for denial of the Debtor's discharge if she unjustifiably "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information" from which her financial condition or business transactions might be ascertained.  The Plaintiff states that the Debtor "systematically" failed to keep records, failed to account for large amounts of cash she withdrew from the Victoria Court account prior to the filing of her bankruptcy, failed to indicate the sources of the deposits to her bank accounts, failed to file personal or business tax returns for 2011 and 2012, and generally has not kept a ledger documenting her cash transactions.  The Plaintiff pleads this as an independent basis for the Complaint.

The Debtor has acknowledged several of the acts and omissions central to the Plaintiff's allegations: that she resided at the residence, that she had custody of her grandchild at the time of the bankruptcy, that she possessed three bank accounts and not just one, that her income disclosures were merely estimates, and that the records she kept were far from perfect.  However, she denies any intent to hinder, mislead, or defraud creditors.  At trial, the Debtor provided credible explanations for each of the statements and omissions at issue.

The Debtor's response to the allegations focuses on her circumstances prior to the filing of her bankruptcy.  For some time and on multiple occasions, the Debtor had to move, trying to "avoid a violent end at the hands of her criminal husband."[2]  Apparently, the Debtor's fears were justified, for she ultimately killed her husband in self-defense.  Broadly, the Debtor argues that the omissions and misstatements on her Schedules, as well as her lack of records, are better explained as being a result of her domestic situation rather than an attempt to defraud the Court, creditors, or officers

---

[2] The Debtor also testified that she was not the first spouse that her late husband had assaulted.  The late husband had previously beaten his previous wife to the point of disablement.  The Debtor testified that she had left her husband several times over the years, filing for divorces but dismissing the cases.

of the estate. She points out that some omissions—such as omitting the custody of her 17 year old granddaughter who would imminently turn 18—actually were intended to prevent a fraud upon the Court, since her care for her grandchild was soon to end and she worried the inclusion of a dependent on the bankruptcy schedules might have created confusion. With regard to the suggestion she was attempting to evade the IRS, the Debtor counters with testimony that she sought resolution with the IRS willingly and on her own, negotiating repayment, meeting with IRS agents, and making payments under agreed plans. And, in light of her need to frequently change where she was living for protection from her husband, the Debtor points to the volume of records she provided rather than the quality, insisting the documentation was as "adequate" as could be expected. The Debtor argues that these circumstances provide a justification for her record-keeping.

The Debtor also explains that the criminal proceeding in which she was involved was an indictment for her husband's murder that was later dismissed. Furthermore, she indicated that it was necessary to have money that her husband did not know about. Thus, she had paid for things in cash with little account.

As to the transfer of the house, the Debtor testified that the house was in her husband's name and was transferred to her father-in-law at her husband's behest. Her father-in-law purchased the property in order to help her husband evade IRS tax liens, and she and her husband continued to live there. However, the Debtor denies that she had any future right to the home, despite hopes she might one day reacquire it. Effectively, she and her husband became renters, paying rent equal to the monthly mortgage payment.

Finally, the Debtor also testified as to the nature of her other omissions. As to the "gift" of Justin Bieber tickets, she testified that her granddaughter and her friends paid her back. Similarly, her son paid her back for a payment she made on his bail, and her granddaughter paid

her back for jewelry the Debtor purchased on her granddaughter's behalf. At trial, the Debtor pointed to specific deposits corroborating her testimony. As to the furniture and clothing, she testified that the significant disparity between the amount she paid for such assets and the amount she claimed on her Schedules was based simply on her belief that used clothes and furniture were not worth as much as new clothes and furniture. The Court found this testimony to be consistent and credible.

## LAW AND ANALYSIS

Under 11 U.S.C. § 727(a), a bankruptcy court will grant a debtor's discharge unless it is shown that such debtor falls within one of the exceptions enumerated in that section. This Court has previously stated that it does not entertain requests for denial of discharge lightly given the severity of the consequences. The Plaintiff asserts that the Debtor, because of her actions in this case, falls under at least one of the exceptions to discharge. Under subsections (2), (3), and (4) of section 727(a), the Court will deny the Debtor's discharge if it is shown that she, with intent to hinder, delay, or defraud creditors or officers of the estate, acted to or permitted the transfer, removal, destruction, mutilation, or concealment of property a year before or any time after the filing of the bankruptcy;[3] that she unjustifiably concealed, destroyed, mutilated, falsified, or failed to preserve any recorded information from which her financial condition or business transactions could be ascertained;[4] that she knowingly and fraudulently made a false oath or account in or in connection with the bankruptcy case;[5] or that she knowingly and fraudulently withheld recorded information relating to her property or financial affairs.[6] Accordingly, the Court has taken up an

---

[3] Section 727(a)(2).

[4] Section 727(a)(3).

[5] Section 727(a)(4)(A).

[6] Section 727(a)(4)(D).

6

analysis of whether the Debtor's actions place her among any of these exceptions.

Turning first to subsection (a)(4), a showing of a "false oath" requires the Plaintiff prove "(1) [the Debtor] made a statement under oath; (2) the statement was false; (3) [the Debtor] knew the statement was false; (4) [the Debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *See Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005). "An omission of an asset can constitute a false oath." *Id.* However, such an omission must also be material to bar discharge, bearing a relationship to the bankrupt's estate or concerning the discovery of assets, business dealings, or the existence and disposition of estate property. *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

In the case of *Pratt*, a lack of a finding of fraudulent intent was dispositive in finding that the debtor's errors and omissions did not merit denial of discharge. The court in that case found no compelling evidence that the debtor had any fraudulent intent in failing to list an account and other assets. Likewise, bankruptcy courts in this district have stated on numerous occasions that they will not bar a discharge by just counting mistakes and deriving fraudulent intent. *See, e.g.*, *Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349, 367 (Bankr. N.D. Tex. 2010); *Neary v. Jordan (In re Jordan)*, 364 B.R. 634, 638-39 (Bankr. N.D. Tex. 2007); *Cadle Co. v. Preston-Guenther (In re Guenther)*, 333 B.R. 759, 767-68 (Bankr. N.D. Tex. 2005) (stating that it "may be close to impossible to produce Schedules and SOFAs that contain no mistaken information, and bankruptcy papers with mistakes are not, alone, enough to bar a debtor's discharge"). Individual bankruptcy cases often involve people who are under stress and without all their records, and thus who make mistakes in their forms; however, mistakes by themselves do not equal fraudulent intent meriting denial of discharge. *In re Jordan*, 364 B.R. at 639.

The disposition of *Pratt* guides this Court's decision: in this case, the Plaintiff has proven that the Debtor made statements under oath and that some of these statements were false. The

Plaintiff may also have proven that the Debtor made some of the statements with knowledge that, technically, such statements were not entirely true. However, the Plaintiff has failed to show evidence of intent by the Debtor to defraud, hinder, or delay creditors of the estate. Furthermore, the Plaintiff has failed to show reckless disregard by the Debtor in making her statements, as her testimony indicates a careful, though sometimes flawed, reasoning for each of her disclosures and omissions, demonstrating an open desire not to mislead. Similarly, the Plaintiff has failed to show any fraudulent intent by the Debtor with regard to her disclosures of recorded information. For these reasons, the Court finds itself unable to agree with the Plaintiff that the Debtor should be denied discharge under section 727(a)(4).

Failing to find the requisite intent by the Debtor to hinder, delay, or defraud creditors or officers of the estate, the Court likewise finds that a denial of discharge under subsection (a)(2) is not merited. The Debtor explained satisfactorily to this Court the disposition of her residence. Furthermore, the Plaintiff was unable to demonstrate to this Court that the Debtor maintained three bank accounts for the purpose of evading creditors. Instead, it seems more likely the Debtor maintained such accounts to evade her husband, who was trying to harm her. While the Court does not condone the failure of the Debtor to disclose each and every bank account on her Schedules, the Debtor's demonstration that the amount listed on her Schedules was a net amount of all three of her accounts, along with her later disclosure of the accounts, satisfies the Court that such failure was not done for the purpose of defrauding creditors.

Finally, while the evidence presented may have satisfied the Plaintiff's burden under section 727(a)(3)[7] in most cases, the Court is of the opinion that this Debtor's circumstances were uncommon. Certainly, the duty to preserve or maintain records "requires the debtor to take

---

[7] The initial burden is on the objecting party to prove that a debtor failed to keep and preserve financial records and that the failure prevented the ascertaining of such debtor's financial condition. *Jordan*, 364 B.R. at 639.

reasonable precautions" in order that records will be preserved. *Guenther*, 333 B.R. at 765. However, the Court concludes that, in the current case, the Debtor was justified in failing to keep or preserve proper records while she sought to protect herself from her husband. This Debtor was literally "on the run," and keeping all her pertinent financial records was probably a low priority. Considering these circumstances, along with the volume of documentation that the Debtor did preserve and disclose, the Court finds the Debtor's actions justified. For this reason, the Debtor's discharge will not be denied under section 727(a)(3).

## CONCLUSION

The bankruptcy process requires honesty and full disclosure of information. However, innocent mistakes by a debtor are not enough to merit a global denial of discharge. Furthermore, the Court recognizes that certain extreme circumstances sometimes require a debtor to make difficult decisions. Some of those decisions may not be perfect, but at the same time, they are not fraudulent. When duties of disclosure and record-keeping conflict with the need for survival, it seems sensible that disclosure may subordinate itself until a later date. After considering the pleadings, the arguments of parties, the testimony of the Debtor, and the other evidence presented, the Court finds the following: that the Debtor lacked any fraudulent intent with regard to the statements and omissions made on her Schedules; that her transfers prior to or after bankruptcy were not made with the intent to hinder, delay, or defraud her creditors; and that any lack of adequate information as to her financial condition was justified due to her extenuating circumstances.

Counsel for the Debtor shall submit a form of judgment providing that the Debtor's discharge is not denied.

###END OF ORDER###